**Johnathan E. Mansfield, OSB #055390**
Email jmansfield@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981
Fax 503.796.2900

**Edward W. Goldstein** (Appearing *pro hac vice*)
Email egoldstein@gfpiplaw.com
**Corby R. Vowell** (Appearing *pro hac vice*)
Email cvowell@gfpiplaw.com
Goldstein, Faucett & Prebeg, L.L.P.
1177 West Loop South, Suite 400
Houston, TX 77027
Telephone 713.877.1515
Fax 713.877.1145

Attorneys for Plaintiff Gary Odom

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| GARY ODOM<br><br>        Plaintiff and Counterclaim-<br>        Defendant,<br><br>vs.<br><br>MICROSOFT CORPORATION<br><br>        Defendant and Counterclaim<br>        Plaintiff. | Case No. 3:09-CV-230-MO<br><br>**PLAINTIFF GARY ODOM'S OPENING<br>CLAIM CONSTRUCTION BRIEF** |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ..................................................................................................................... 5

    A. Law of Claim Construction ........................................................................................ 5

    B. Terms to be Construed ................................................................................................ 7

        1. Toolbar ................................................................................................................ 8

        2. Tool group .......................................................................................................... 9

        3. Tool .................................................................................................................... 9

        4. Tool group divider ........................................................................................... 11

        5. Selecting .......................................................................................................... 12

        6. Interactively tracking ....................................................................................... 13

        7. User indication to cease tracking ..................................................................... 14

        8. Altering the condition ...................................................................................... 15

III. CONCLUSION ............................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 5, 6, 11

*Spectra–Physics v. Coherent*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) .......................................... 13

**Other Authorities**

Merriam-Webster's Third Unabridged Dictionary, ©1961 ...................................................... 14, 15

Microsoft Computer Dictionary, 4th Edition, ©1999 ...................................................... 10, 12, 13

Plaintiff Gary Odom ("Odom") files this Opening Claim Construction Brief and respectfully shows the following:

**I.   INTRODUCTION**

The first design challenge for any product is utility: making a product useful. But the trickiest design challenge for every product is usability - making a product easy to use. The product upgrades most well-received by consumers are often not those that add features, but those that enhance usability.

After releasing Office 2003, Microsoft realized that it faced a serious dilemma with its Office line of software products.

> Every version we were putting our heart and soul into developing these new features, undergoing a rigorous process to determine which of the many areas we would invest in during a release, and then working hard to design, test, and ship those features. The only problem was that people weren't finding the very features they asked us to add.
>
> - Jenson Harris, Microsoft Group Program Manager, Office User Experience Team[1]

Microsoft's challenge with Office was entirely usability: creating an interface innovation that let users more readily find the tools they needed.

How did software come to having so many tools that users were overwhelmed?

---

[1] Jensen Harris: An Office User Interface Blog - "New Rectangles to the Rescue? (Why UI, Part 4)"

1

**PLAINTIFF GARY ODOM'S**
**OPENING CLAIM CONSTRUCTION BRIEF**
**CASE NO. 3:09-CV-230-MO**

The earliest computers were overgrown calculators. The first computing tasks were missile trajectories, then financial accounting. In the decades after World War II, humans interfaced with computers by typing commands. Shown at right is Microsoft's MS-DOS operating system, with its command-line interface. Remembering the proper commands was a constant memory challenge.

The first personal computer with a graphical user interface (GUI) was the Xerox Alto, available in 1973. The Alto GUI was a revolutionary conceptual shift in how humans interacted with computers, a tremendous leap forward in usability. GUI made software readily accessible, as features were both visible and accessed graphically.

GUI was defined by having an onscreen pointer, called a cursor, directed by a device, such as a mouse, to click and activate objects onscreen.[2] Computer software interactively tracked mouse movement and correspondingly displayed a moving cursor. Highlighting selected on-screen objects under the cursor gave immediate feedback as to what would be activated by clicking the mouse. Point-and-click became the paradigm for feature activation.

Commands were replaced by menus on a menu bar, as shown. The Xerox Alto had menus. Menus provided point-and-click commands from a list. Menus on a menu bar were generally organized by task: file (referring to managing computer files/documents), edit, et



---

[2] Douglas Engelbart at Stanford invented the mouse in 1963.

2

**PLAINTIFF GARY ODOM'S**
**OPENING CLAIM CONSTRUCTION BRIEF**
**CASE NO. 3:09-CV-230-MO**

cetera.

Menus were supplemented by toolbars. A toolbar comprised a row of buttons to activate software features. Toolbars first appeared in the Xerox Alto.

Toolbars advanced usability, as they provided an often iconic representation of tools that a user could activate with a single click. By contrast, menu access almost always took two clicks (first the menu, then the menu item that represented the command). Hence, toolbars were a step forward in productive usability.

From the 1980s on, the competitive race in personal computer commercial software applications became adding more tools. Software companies regularly showed comparison charts of how many features they offered versus rival products.

The burgeoning number of tools created a deepening usability problem, as Jensen Harris of Microsoft noted.

Toolbars began as one or more rows of tools. Software producers allowed customization of toolbars, so that users could edit or construct toolbars to their liking, adding tools or subtracting tools one by one.

Cosmetic separators between tools were sometimes used, as shown above, lending some semblance of organization. But these tool groupings were merely cosmetic, not functional. A user could <u>not</u> edit or manipulate groups of tools as an integral entity.

3

In 2000, Gary Odom made another advance in GUI: active tool groups. Odom foresaw the organization dilemma with burgeoning software tools. So Odom made tool groups themselves operational: active tool groups.



One feature of active tool groups is to compress and expand tool groups, to show fewer or more tools respectively for a group. The above figure is a composite of Figures 5 & 6 of the asserted patent, attached as Exhibit A. Clicking on the 'compressed group indicator' for the tool group in the top figure results in showing more tools for that group.

Other tool group functions were disclosed: arrange tools in a group based upon usage, making the most frequently used tools most readily accessible; drag-and-drop tool groups to customize or create toolbars. Beyond the mere cosmetic appearance of groupings of tools, Odom invented active tool groups.

Having filed its own patent claims on active tool groups in 2004[3], Microsoft adopted active tool groups in its Office 2007 products as a solution to the usability challenge it faced for better tool access. The *Clipboard* tool group for Word 2007 is shown. Clicking on the *Clipboard* tool group divider button, which highlights when selected, as shown, shows the *Clipboard* tool group extension.

---

[3] 2006/0036965, by Jensen Harris et al, attached as Exhibit B.

## II. ARGUMENT

### A. Law of Claim Construction

First and foremost, claim terms are properly construed with precision. Where possible, one looks to the actual claim language for definition of critical terms. The specification provides the best reference for terms disclosed but not defined within the claims. Where intrinsic evidence is not instructive, for known terms of art, an accurate definition may best be had from the most appropriate technical dictionary. For terms of non-technical nomenclature, a general dictionary is of resort, bearing in mind that claim terms are construed within the context of the claims as a whole, from the perspective of one of skill in the art at the effective date of filing the patent at issue, being careful not to import elements not mentioned in the claim, or "in a manner different from the plain import of the terms."

> It is a "bedrock principle" of patent law that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Innova*, 381 F.3d at 1115; *see also Vitronics*, 90 F.3d at 1582 ("we look to the words of the claims themselves . . . to define the scope of the patented invention"); *Markman*, 52 F.3d at 980 ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims."). That principle has been recognized since at least 1836, when Congress first required that the specification include a portion in which the inventor "shall particularly specify and point out the part, improvement, or combination, which he claims as his own invention or discovery." Act of July 4, 1836, ch. 357, § 6, 5 Stat. 117, 119. In the following years, the Supreme Court made clear that the claims are "of primary importance, in the effort to ascertain precisely what it is that is patented." *Merrill v. Yeomans*, 94 U.S. 568, 570 (1876). Because the patentee is required to "define precisely what his invention is," the Court explained, it is "unjust to the

5

public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." *White v. Dunbar*, 119 U.S. 47, 52 (1886); *see also Cont'l Paper Bag Co. v. E. Paper Bag Co.*, 210 U.S. 405, 419 (1908) ("the claims measure the invention"); *McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116 (1895) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim . . . , we should never know where to stop"); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961) ("the claims made in the patent are the sole measure of the grant").

We have frequently stated that the words of a claim "are generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582; *see also Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998). We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.

. . . .

Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms. *See Vitronics*, 90 F.3d at 1582; *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms").

To begin with, the context in which a term is used in the asserted claim can be highly instructive. . . .

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005).

6

B.  **Terms to be Construed**

Odom asserts that Microsoft infringes claims 8, 10 and 14 of the '592 patent. Each of the terms in dispute appears in claim 8 as shown below, with the first instance of the disputed terms in bold:

> 8. A computer-implemented method comprising:
> displaying a **toolbar** comprising at least one first **tool group**,
> > wherein said first tool group comprises at least one user-selectable **tool**,
> > wherein visibly designating said first tool group by at least one user-manipulatable divider located near at least one end of said first tool group,
> > wherein said first **tool group divider** is visually distinct from a said tool and from any visible means for directly manipulating said toolbar in its entirety, and
> > wherein said tool group divider is user-manipulatable for **altering the condition** of said tool group;
> 
> **selecting** said first tool group;
> 
> **interactively tracking** user indication of movement related to said first tool group until receiving **user indication to cease tracking**; and
> 
> altering the condition of at least one tool group on said toolbar based upon said tracked user indications.
>
> 10. The method according to claim 8, wherein said altered condition comprises, at least in part, altering the number of tools displayed in at least one tool group on said toolbar.
>
> 14. The method according to claim 8, further comprising: visibly indicating said altered condition when the number of tools displayed in a tool group changes resultant from said tracked user indications.

7

### 1. Toolbar

| Odom's Construction | Microsoft's Construction |
|---|---|
| one or more tool groups | A window holding tools that may be resized by a user to any rectangular configuration |

The term 'toolbar' is defined within claim 8 as "comprising at least one first tool group," and so the only reasonable construction of the term is by its claim-given definition. In proper context, a 'toolbar' as defined in the claim is tangibly different than prior art toolbars, in that the claim-defined 'toolbar' comprises one or more active tool groups.

Claim 8 recites a triumvirate functional hierarchy comprising a toolbar, tool groups, and tools, readily understandable to one of skill in the art without elaboration. Hence, simple definitions are sufficient.

The specification disclosed toolbars as groups of tools. Figures 3, 4 and 5 illustrated toolbars of the present invention as comprising tool groups. For example, Figure 3 depicted a tool group 6 that is shown on an otherwise prior art toolbar 1F.



The toolbar in Figure 3 appeared as in the prior art, but with the claimed functionality of active tool groups overlaid. The prior art cosmetic grouping of tools is enhanced to active, user-manipulatable tool groups. See 1:42-44 ("tool groups as an integral entity"), and 1:50-59 ("a tool

8

group becomes a user-manipulable entity unto itself"). The advantage of this added functionality without stark change in look facilitates new functionality with no learning curve for a user.

### 2. Tool group

| Odom's Construction | Microsoft's Construction |
|---|---|
| a group of tools | The set of tools between group dividers, or between one end of a toolbar and a group divider |

The parameters of a 'tool group' are fully defined within claim 8, so a simple definition for the term itself is called for, to avoid redundancy and incongruity within the claim. The claim language succinctly defines a 'tool group' as comprising "at least one user-selectable tool," while the full definition of 'tool group' and its relationship with other functional claim elements are further elaborated in the claim itself, so that one of skill in the art would understand the term 'tool group' within the context of the claim as a whole.

### 3. Tool

| Odom's Construction | Microsoft's Construction |
|---|---|
| software command button | An icon symbolic of a functional feature |

The term 'tool' as used in the claim is conformant with the prior art, a 'tool' acting as a functional software command button.

The specification, and Figure 2, as shown, referred to "tool buttons." [2:25] Further, a 'tool' as claimed is referred to in prosecution-cited prior art, from Microsoft, as "tool," "button," and "toolbar button," e.g., in

9

Microsoft 2000 MSDN (Microsoft Developers Network) *Toolbar Controls Overview,* attached as Exhibit C. A 'tool' is referred to as a "toolbar button" in the prosecution-cited Microsoft document: *WD2000: How to Create Custom Toolbars and Toolbar Buttons*, attached as Exhibit D.

Microsoft's own technical dictionary at the time had no definition of 'tool', but does for 'button.'

> ***button*** [noun]: A graphic element in a dialog box that, when activated, performs a specified function. The user activates a button by clicking on it with a mouse or, if the button has the focus, by hitting the Return or Enter key. - Microsoft Computer Dictionary, 4th Edition, ©1999.

The term 'command,' hoary in software usage, is defined as follows:

> ***command*** [noun]: An instruction to a computer program that, when issued by the user, causes an action to be carried out. - Microsoft Computer Dictionary, 4th Edition, ©1999.

Using 'command' in the term definition is intended as modestly clarifying, even as 'button' is analogous.

'Tool' is a functional element of the claim. As such, a plain functional definition is called for. Odom's proposed construction succinctly defines 'tool' as one of the skill in the art at the time of the effective filing date would have readily understood.

### 4. Tool group divider

| Odom's Construction | Microsoft's Construction |
|---|---|
| the portion of a tool group that visibly designates a tool group, and is user-manipulatable for altering the condition of a tool group | A representation on the display that segregates one tool group from another tool group |

Odom's construction incorporates the definition of 'tool group divider' from claim 8 itself. One could reasonably argue that the term itself needs no construction, as the claim fully construes 'tool group divider' as a functional element, but the term is crucial to the claim, and so its construction is helpful.

> Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms. *See Vitronics*, 90 F.3d at 1582; *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms").

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

The specification at [3:43-67] disclosed tool group dividers as user manipulatable, in reference to Figures 4-6. Figures 5 & 6 depict user manipulation of a tool group divider, as disclosed in various embodiments (the following  quote being one embodiment): "a collapsed group 6 may be expanded by one tool 2 by clicking the tail group divider 5 or compressed group indicator 7." [3:49-51]

11

## 5. Selecting

| Odom's Construction | Microsoft's Construction |
|---|---|
| visually indicating selection | Choosing through an input by the user |

Within the context of any and every graphical user interface (GUI), 'selecting' is a precisely defined term, well known in the prior art. The specification gives an example: "Figure 7 depicts an example of visual feedback to a user of a selected tool 2hs." [4:25-26]



In sync with Odom's specification, Microsoft's technical dictionary defines 'select.'

> *select* [verb]: 1. In general computer use, to specify a block of data or text on screen by highlighting it or otherwise marking it with the intent of performing some operation on it. - Microsoft Computer Dictionary, 4th Edition, ©1999.

12

### 6. Interactively tracking

| Odom's Construction | Microsoft's Construction |
|---|---|
| In computer graphics, causing a displayed symbol, such as a pointer, to match on the screen movements of a mouse or another pointing device | Following, through an exchange of information and control between a user and a computer process, an input by the user representing a change in location |

The term 'interactively tracking' refers to a ubiquitous feature of graphical user interfaces. Interactive tracking is the foundation of every GUI. The specification repeatedly refers to common GUI techniques: of using a pointing device for cursor-based operations, such as selecting, clicking, and drag-and-drop.

"A patent need not teach, and preferably omits, what is well known in the art." *Spectra–Physics v. Coherent*, 827 F.2d 1524, 1534 (Fed. Cir. 1987).

Odom's proposed construction is verbatim from Microsoft's technical dictionary.

*track* [verb]: 4. In computer graphics, to cause a displayed symbol, such as a pointer, to match on the screen the movements of a mouse or another pointing device. - Microsoft Computer Dictionary, 4th Edition, ©1999.

13

**7. User indication to cease tracking**

| Odom's Construction | Microsoft's Construction |
|---|---|
| indication: the action of indicating<br><br>cease: leave off; bring to an end<br><br>tracking: In computer graphics, causing a displayed symbol, such as a pointer, to match on the screen movements of a mouse or another pointing device | An input from the user to stop tracking movement related to said first tool group |

Odom's contention is that the phrase 'user indication to cease tracking,' is understood in the context of tracking, defined foregoing, coupled to 'user indication' 'to cease' tracking. The plain meanings of the words are most suitable here, as anyone would understand them.

Though used in a technical context, 'indication' has no especial technical definition, even as it is a neat term for the action transpiring.

*indication* [noun]: the action of indicating - Merriam-Webster's Third Unabridged Dictionary, ©1961, excerpts of which are attached as Exhibit F.

*indicate* [verb]: show or make known with a fair degree of certainty - Merriam-Webster's Third Unabridged Dictionary, ©1961

Likewise, 'cease' is not a technical term, and its meaning is well known.

*cease* [verb]: to leave off : bring to an end - Merriam-Webster's Third Unabridged Dictionary, ©1961

14

### 8. Altering the condition

| Odom's Construction | Microsoft's Construction |
|---|---|
| altering: causing to become different in some particular characteristic without changing into something else<br><br>condition: a mode or state of being | Changing the components displayed in or the location of |

Again, plain English suffices, giving the term its "ordinary and customary meaning," bearing in mind that the term's construction is also worn by dependent claims asserted in this case, which further narrow the scope of the term.

*alter* [verb]: 1. to cause to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else - Merriam-Webster's Third Unabridged Dictionary, ©1961

*condition* [noun]: 4. a mode or state of being - Merriam-Webster's Third Unabridged Dictionary, ©1961

## III. CONCLUSION

For the foregoing reasons, Plaintiff Gary Odom respectfully requests that the Court adopt Odom's claim constructions.

Dated: August 26, 2009

/s/ Edward W. Goldstein
Edward W. Goldstein (Appearing *Pro Hac Vice*)
Corby R. Vowell (Appearing *Pro Hac Vice*)
**Goldstein, Faucett & Prebeg, L.L.P.**
1177 West Loop South, Suite 400
Houston, TX 77027
Telephone 713.877.1515
Facsimile 713.877.1145
Email: egoldstein@gfpiplaw.com
Email: cvowell@gfpiplaw.com

Johnathan E. Mansfield
**Schwabe, Williamson & Wyatt, P.C.**
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900
Email: jmansfield@schwabe.com

Attorneys for Plaintiff Gary Odom

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 26, 2009. Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein
Edward W. Goldstein

16