IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY ODOM,             No. CV 09-230-MO

       Plaintiff,             OPINION AND ORDER

   v.

MICROSOFT CORPORATION,

       Defendant.

**MOSMAN, J.**,

       Plaintiff Gary Odom alleges that Defendant Microsoft has infringed on his patent, United States Patent No. 7,363,592 B1 ("the `592 patent"), through the manufacture and distribution of Microsoft Office 2007. On September 21, 2009, the Court held a *Markman* Hearing to construe eight terms contained in Mr. Odom's disputed `592 patent. This matter comes before the Court on Mr. Odom's Motion for Reconsideration of the Court's Adopted Claim Construction (#91).

       In his motion, Mr. Odom challenges the Court's construction of three terms: "toolbar"; "tool group"; and "tool." As a threshold matter, Mr. Odom failed to comply with Local Rule 7.1 because he did not confer with Microsoft before filing his motion.[1] In the interest of judicial efficiency, however, I address the merits of Mr. Odom's arguments. Because Mr. Odom has failed to show a clear error of law that requires the Court to reconsider its adopted constructions, I DENY his motion.

---

[1] Local Rule 7.1(a) requires the first paragraph of each motion, except a motion for a temporary restraining order, to certify that the movant made a good-faith effort to resolve the dispute by conferring with the opposing party. "The Court may deny any motion that fails to meet this certification requirement." LR 7.1(a)(2).

## FACTUAL BACKGROUND

The prosecution history of Mr. Odom's `592 patent is relevant to the issues in this motion. In 2000, Mr. Odom filed a patent application, U.S. Patent Application No. 09/707,194 ("the `194 application"). During examination, the Examiner rejected all of Mr. Odom's pending claims. This decision was based in part on the Examiner's conclusion that Mr. Odom's invention was anticipated by the prior art, U.S. Patent No. 5,644,737 to Tuniman, et al. ("Tuniman"). Mr. Odom appealed the Examiner's decision to the Board of Patent Appeals and Interferences ("the Board"). During his appeal, Mr. Odom attempted to distinguish his innovations from those of Tuniman.[2] The Board rejected Mr. Odom's arguments.

After appeal, Mr. Odom altered his claims and filed a continuation application, U.S. Patent Application No. 11/125,276 ("the `276 Application). This time, Mr. Odom successfully distinguished his innovations from those of Tuniman, and his `592 Patent issued from the `276 Application. Because the `276 Application was a continuation of the `194 Application, U.S. Patent No. 7,036,087 ("the `087 Patent") issued from the `194 Application as well. Therefore, the prosecution history of the parent `087 Patent is considered part of the prosecution history of the `592 Patent.

## DISCUSSION

I. <u>Standard of Review</u>

A party is not permitted to move for reconsideration simply to obtain a second bite at the apple. Rather, the motion "must set forth facts or law of a strongly convincing nature to induce

---

[2] Mr. Odom's Reply Brief to the Board ("Pl.'s Reply Br.") is found at Exhibit B to Matthew N. Bathon's Declaration (#86).

the court to reverse its prior decision." *Medford Pac. v. Danmor Constr.*, 2 F. Supp. 2d 1322, 1323 (D. Or. 1998). A motion for reconsideration may be warranted by newly discovered evidence, a court's clear error, or an intervening change in the controlling law. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

Mr. Odom maintains that his motion is justified because the Court committed clear error in its construction. But throughout his motion, Mr. Odom simply reasserts the facts, arguments, and law that he fully briefed and argued during the *Markman* hearing. In adopting its constructions of "toolbar," "tool group" and "tool," the Court considered, and rejected, these precise arguments. The fact that Mr. Odom disagrees with the Court's decision does not, in and of itself, justify a motion for reconsideration.

## II.     Claim Construction

Claim construction is a matter of law to be decided by a judge, not a jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996). In construing claim language, "the court gives claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art." *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000). Even where a term has an ordinary and accustomed meaning, a patent applicant may act as his own lexicographer and "ascribe a different, or modified, meaning to the term." *Id.*

### A.     *Toolbar*

At the *Markman* hearing, the Court construed the term "toolbar" as "a window holding tools that is user-manipulatable." In doing so, the Court rejected Mr. Odom's suggestion that "toolbar" should be defined as "one or more tool groups." After looking to the `592 Patent claim language and prosecution history, the Court determined that Mr. Odom had not specifically

defined the term "toolbar." Finding no specific construction unique to Mr. Odom's patent, the Court adopted the term's ordinary accustomed mean as understood by a person of reasonable skill in the art. *See York Prods., Inc. v. Cent. Tractor Farm Family Ctr.*, 99 F.3d 1568, 1572, (Fed. Cir.1996) ("Without an express intent to impart a novel meaning to claim terms, an inventor's claim terms take on their ordinary meaning.").

### 1. Mr. Odom's Proposed Definition

Mr. Odom argues that his claim defines "toolbar" as "comprising at least one first tool group." (Hr'g Tr. 43:8-14.) The claim language does not support his argument. Claim 8 of the `592 Patent reads, in relevant part: "[d]isplaying a toolbar comprising at least one first tool group . . . ." A person of ordinary skill in the art would understand "comprising at least one first tool group" to be a necessary condition for purposes of Mr. Odom's claim, not a definition of the term "toolbar" itself.

### 2. Patent Prosecution History

The prosecution history of the `592 patent informed the Court's construction of "toolbar." In appealing the Examiner's rejection of the `194 Application, now the `087 Patent, Mr. Odom wrote, "Tuniman . . . discloses how toolbars may be resized. Basically, a toolbar is a window holding tools that may be resized by the user." (Pl.'s Reply Br. at 7.) Mr. Odom argued at the *Markman* hearing, and continues to argue in his motion for reconsideration, that his statement only characterized the prior art—the toolbar in the Tuniman patent—and has no relevance to the construction of his `592 patent. (Hr'g Tr. 43:3-18; Mem. in Supp. of Mtn. for Recons. (#92) 9.)[3]

---

[3] Mr. Odom's remaining arguments against including "window" and "user-manipulatable" in the adopted construction were addressed at the *Markman* hearing (Hr'g Tr. 47:24-51:1), and will not be addressed further here.

Mr. Odom's appeal statement is relevant to determining how a person with ordinary skill in the art would construe the term "toolbar." Mr. Odom presented no evidence that Tuniman defined "toolbar" in a unique way. Nor is there evidence that the `592 Patent created a definition of "toolbar" that is distinct from its ordinary and accustomed meaning. Rather, both Tuniman and the `592 patent assume the ordinary meaning of the term "toolbar," which required the Court to determine what that term would mean to a person with ordinary skill in the art. The Court concluded that such a person would understand "toolbar" to mean a "window holding tools that is user-manipulatable." This definition is consistent with the `592 Patent because it still allows Mr. Odom's claim to fulfill its necessary condition that the toolbar contain at least one tool group. (*See* Hr'g Tr. 46:21-47:6.) Accordingly, the Court will not reconsider its construction of "toolbar."

B.   *Tool Group*

The Court construed the term "tool group" as "the set of tools between group dividers, or between one end of a toolbar and a group divider." Regardless of what the term "tool group" would mean to a person of ordinary skill in the art, Mr. Odom has acted as his own lexicographer with respect to this term. When he appealed the `087 Patent, Mr. Odom wrote, "[T]he set of tools between group dividers, or between one end of a toolbar and a group divider is referred to as a group of tools." (Pl.'s Reply Br. at 4) (internal references omitted). Mr. Odom later described this language as "a precise definition for [the term "tool group"], providing precise parameters of claim scope when the term is used as claim language." (*Id.* at 14). This language is also contained in the `592 patent itself.

Mr. Odom now argues that this language, as used in the `592 Patent, merely describes "an

- 5 -

embodiment of prior art toolbars." (Mem. in Supp. of Mtn. for Recons. (#92) 10.) He still fails to reconcile this argument with his earlier statement to the Board, in which he affirms that he provided a precise definition for the term "tool group" as used in his claim. The Court is unaware of any language in the `592 Patent prosecution history that expressly rescinds this definition or limits it to the prior art.[4] Therefore, the Court will not reconsider its construction of "tool group."

    C.    *Tool*

The Court construed the term "tool" as "an icon or text, other than a control button, representing a functional feature." Mr. Odom objects only to the portion of the Court's construction that distinguishes a "tool" from a "control button."

The distinction between a "tool" and a "control button" comes from the `087 Patent prosecution history. In his appeal, Mr. Odom distinguished his invention from that of Tuniman by stating, "Note that icon 32 is a logo and control button, not a tool." (Pl.'s Reply Br. at 11.) This language shows that, whatever the term "tool" may mean to a person of ordinary skill in the art, it does not mean a "control button." Accordingly, the claim construction must distinguish a "tool" from a "control button" in order to conform to the term's ordinary and accustomed meaning.

---

    [4] Where the `592 Patent refers only to the prior art, that reference is explicit:

> Tools are typically functionally segregated by group dividers. The set of tools between group dividers, or between one end of a toolbar and a group divider is referred to as a group of tools. For example, tools derived from the 'File' menu may be segregated by a group divider from tools derived from the 'Edit' menu. *In the prior art*, users may customize tools while in a customization mode, grouping and partitioning tools without regard to their functional derivation. *Also in the prior art*, tools may be added or removed via a menu modelessly.

(Bathon Decl. (#86) Ex. A at 7) (internal numerical references omitted) (emphasis added).

At the *Markman* hearing, the Court specifically asked Mr. Odom's counsel to explain the discrepancy between the patent prosecution history and Mr. Odom's proposed construction. Counsel noted only that the control button in Tuniman is "not a tool. It doesn't provide an additional function for the user." (Hr'g Tr. 41:6-8.) The Court then asked counsel whether a person reasonably skilled in the art would recognize the unique functional features associated with the term "control button." (*Id.* at 42:7-15.). Counsel agreed that a "control button" is commonly understood to be a button that does not provide the same functionality as a "tool." (*Id.* at 42:19-25.)

The arguments raised in Mr. Odom's motion for reconsideration, which consist primarily of citations to the Microsoft Computer Dictionary, do little to illuminate this issue. In his motion, Mr. Odom does not retract counsel's earlier position that a "control button" does not have the same functionality as a "tool," and that the different functionality would be commonly understood by someone with ordinary skill in the art. Accordingly, the Court will not reconsider its construction distinguishing "tool" from "control button."

## CONCLUSION

For the foregoing reasons, I DENY Plaintiff Gary Odom's Motion for Reconsideration of the Court's Adopted Claim Construction (#91).

IT IS SO ORDERED.

DATED this   9th   day of November, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court