1      IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF OREGON

3   GARY ODOM,                    )
                                  )
4          Plaintiff,             )  No. CV-09-230-MO
                                  )
5      vs.                        )
                                  )  March 11, 2010
6   MICROSOFT CORPORATION,        )
                                  )
7          Defendant.             )  Portland, Oregon
    _____)

8

9

10

11

12

13

14                   **Oral Argument**

15          TRANSCRIPT OF PROCEEDINGS

16   BEFORE THE HONORABLE MICHAEL W. MOSMAN

17      UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23

24

25

```
 1

 2                              APPEARANCES

 3

 4   FOR THE PLAINTIFF:        Mr. Gary Odom, pro se
                               123 NW 12th Avenue, No. 1545
 5                             Portland, OR 97209

 6

 7

 8

 9

10   FOR DEFENDANT
     MICROSOFT CORPORATION:    Mr. Joseph A. Micallef
11                             Mr. Matthew Bathon
                               Arnold & Porter, LLP
12                             555 Twelfth Street, NW
                               Washington, DC 20008
13

14

15

16

17   COURT REPORTER:          Bonita J. Shumway, CSR, RMR, CRR
                               United States District Courthouse
18                             1000 S.W. Third Ave., Room 301
                               Portland, OR  97204
19                             (503) 326-8188

20

21

22

23

24

25
```

(P R O C E E D I N G S)

1          THE CLERK:  Your Honor, this is the time set for
oral argument in Civil Case 09-230-MO, Gary Odom v.
Microsoft.

          And would the parties, beginning with plaintiff,
please identify yourself for the record.

          MR. ODOM:  Gary Odom, plaintiff.

          MR. MICALLEF:  Joe Micallef of Arnold & Porter for
Microsoft.

          THE COURT:  We're here to figure out basically
what to do with this case at this point.  Mr. Odom has filed
a motion to dismiss based on a conversation we earlier had
on the record by telephone.

          Microsoft has counterclaims against Mr. Odom
which, as I understand it from a recent submission, it
intends to continue to pursue.  Is that right?

          MR. MICALLEF:  That's right, Your Honor.

          THE COURT:  And I am persuaded that it's not
within my power to simply dismiss them even without
prejudice at this point.

          If I recall correctly, we left off at about the
stage of expert witnesses being identified.  That was one of
Mr. Odom's complaints was that he didn't have the experts he
wanted or they didn't say what he had intended for them to
be saying.

1        So what is your suggestion, sir, for proceeding at

2  this point, what you're hoping to see happen?

3        MR. MICALLEF:  Me, Your Honor?

4        THE COURT:  Yes.

5        MR. MICALLEF:  I think we should pick up the

6  schedule where we left it off, which was just after the

7  service of opening expert reports, and go from there.

8        THE COURT:  Meaning that you want rebuttal experts

9  and then what?

10       MR. MICALLEF:  And then deposition -- the way the

11 schedule was before, was there was a date for opening expert

12 reports, a date for rebuttal, I think there was maybe one

13 other date for secondary considerations of non-obviousness,

14 just because that's how that works, and then some time for

15 depositions of experts.  Fact discovery is over.  We're past

16 that point.

17       THE COURT:  And then dispositive motions?

18       MR. MICALLEF:  And then dispositive motions

19 scheduled, and then the usual pretrial and trial, if

20 necessary.

21       THE COURT:  Do you -- so you have not yet retained

22 any rebuttal experts?

23       MR. MICALLEF:  Well, we've retained them.  Your

24 Honor stayed the schedule just after we served our opening

25 invalidity report, so I have a report on non-infringement to

```
 1    serve, and will in very short order.
 2              THE COURT:  A rebuttal report?
 3              MR. MICALLEF:  A rebuttal report on
 4    non-infringement.
 5              I received an infringement report from Mr. Odom's
 6    prior counsel, although I guess since then he has told me
 7    that he has withdrawn that report.  I don't know where that
 8    stands, but -- so I'm ready with experts as soon as the
 9    Court wants to go forward.
10              THE COURT:  I'm sure you've thought about this,
11    but your concern, of course, is that you could face all of
12    these issues later, so you hope to obtain some kind of
13    preclusive effect from this litigation, and yet you face the
14    issue of litigating whether a pro se defendant against your
15    counterclaims represents a full and fair opportunity to
16    litigate this matter.
17              I guess you've concluded that you are prepared to
18    argue at some point in the future that it does?
19              MR. MICALLEF:  I have thought about this question
20    quite a bit, Your Honor, but my client is in a somewhat
21    impossible position.  Mr. Odom has not only sued Microsoft
22    but has stated expressly that if the Court dismisses without
23    prejudice, he's coming after us again.  He's going to come
24    for not only damages in the amounts of many tens of millions
25    of dollars but for an injunction against the sale of
```

1    Microsoft Office and for enhanced damages.  He has sued our

2    licensees.  As you might know, Your Honor, Microsoft has

3    offered to license its Ribbon technology to the world, or

4    its interface to the world for free, and many have taken

5    that up.  He's sued them in the Autodesk case and the

6    Attachmate case.  There is no reason to believe that he

7    won't sue others who may be customers of Microsoft,

8    Hewlett-Packard, among others, who sell products like

9    computers with Microsoft Office.

10            He's already cost us a lot of money.  He's

11   published outrageous statements about my client, about

12   individual employees of my client.  It's sort of an

13   impossible situation.

14            THE COURT:  You feel like you've made the best

15   choice you can?

16            MR. MICALLEF:  I feel like we have to go forward

17   and my client feels like we have to go forward.

18            THE COURT:  All right.  Thank you.

19            Mr. Odom, what we're contemplating here is the

20   filing of rebuttal expert reports, which Microsoft has

21   apparently already in hand.  You would not be obligated to

22   see that one is prepared and file it; you could or could

23   not, as you chose.  I would not allow depositions of

24   experts.  I think that would be pointless here.

25            So following the preparation of any rebuttal

1    expert reports, we would proceed to summary judgment,

2    dispositive motions, but that probably just means that

3    Microsoft would file a motion for summary judgment, and that

4    motion would be premised on the idea that even taking the

5    facts in the light most favorable to you, there's some legal

6    argument why they should win, that your claim can't stand on

7    even your own allegations of fact.

8         Occasionally it also means that someone says that

9    there's no actual factual support for an allegation a

10   plaintiff has made, that although the allegation was made in

11   the complaint, it ended up as discovery progressed that it

12   just never had any evidence to support it, and therefore

13   should get dumped before trial.

14        And then if Microsoft prevails at that stage, that

15   ends this case with prejudice against you.  The reason --

16   the most common reason why summary judgment motions lose is

17   one of two:  either they've made a legal argument that

18   doesn't work -- for example, Microsoft might say, Mr. Odom

19   claims that X set of facts amounts to infringement, and so

20   even taking Mr. Odom at his word, X set of facts does not

21   amount to infringement.  So one common way summary judgment

22   doesn't work for a party like Microsoft is that the judge

23   simply disagrees with their legal argument and says it

24   might, it might be infringement, let's let a jury decide.

25        The more common, the most common reason why

1  summary judgment gets denied is that Microsoft contends that

2  there's no real dispute of fact based on evidence that would

3  support your claims, and a plaintiff is able to respond by

4  saying, yes, there is at least one or perhaps several

5  disputes of fact.  And so we have to let a jury decide that.

6        So just to pull one out of thin air that doesn't

7  have anything to do with this case, perhaps a plaintiff

8  would allege customer confusion in a trademark or copyright

9  case, and a defendant would come in and say there's no

10  evidence of customer confusion.  Summary judgment would get

11  defeated in a case like that just by a plaintiff saying,

12  "Well, no, I have these pieces of evidence that show the

13  possibility of customer confusion."

14        So that's where we're headed.  If Microsoft wins

15  at summary judgment, then the case is over.  If they lose,

16  we would be heading towards trial.

17        I recognize that all of this puts you in an

18  equally impossible position.  I have made the decision that

19  I cannot indefinitely delay the case while you seek to

20  obtain counsel that would allow you to proceed with the

21  case.  And so there is no real satisfactory answer to the

22  issues that face us.

23        I am going to proceed with some sort of schedule

24  that gets us to the point of summary judgment, which may

25  involve, depending on what you decide to do about rebuttal

experts, nothing in the short term that needs to be done on

your behalf, and your best efforts just to try to answer as

best you can Microsoft's motion for summary judgment.

I'll turn to you to put anything on the record

you'd like to put on the record about any -- going forward

in this case.

MR. ODOM:  Thank you, Your Honor.  Should I stand

or is sitting okay?

THE COURT:  You can sit is fine.

MR. ODOM:  Thank you.

One aspect that troubles -- there's a lot of

aspects that trouble me.  In the large, I am overwhelmed,

shall we say, being a single individual.  I have friends who

are attorneys and I have clients who work in this field

also, and by myself, as you know, a practitioner in the

patent law field, but I'm not an attorney and have just a

solo business with a young man as a partner.  So taking this

on pro se is overwhelming.  I'm at least smart enough to

know what I don't know and to not overreach, and proceeding

constitutes that, in my mind.

On a more particular point, my erstwhile attorneys

did nothing, nothing with regard to discovery.  They gained

no information about Microsoft's products or anything that

would be useful to me with regard to a fact basis.  I have

only a small sample of public information in order to

1  proceed.  That puts me in a considerable disadvantage in

2  proceeding.  I do not have the financial resources nor the

3  human resources to proceed other than by myself, and I work

4  full time.

5          So you understand my situation with regard to the

6  large and with regard to the particulars.  That's all I

7  would have to say on that particular issue.

8          Before we dismiss, I have another issue that I'd

9  like to address with the Court, but it is outside the

10  context that we're talking about with regard to proceeding.

11          THE COURT:  All right.  Then let's proceed with

12  the current scheduling issue.

13          MR. ODOM:  I have one more thing to say, Your

14  Honor.

15          THE COURT:  About scheduling?

16          MR. ODOM:  Yes.

17          THE COURT:  Go ahead.

18          MR. ODOM:  I have to -- I have to apologize

19  beforehand to you.  I may know a little bit about patent law

20  as far as its substance goes.  You've seen my letters.  You

21  know, hopefully, that I at least can write intelligible

22  sentences and quote case law.  I know next to nothing about

23  federal procedure, and so I'm afraid mostly that I would

24  fall down either in what I don't say that I should say, and

25  vice versa, what I say that I shouldn't say.  So please

accept my apology beforehand for my shortcomings with regard
to procedure and etiquette of which I am simply untrained
and ignorant.

THE COURT:  That's fine.  You're not the first
person to appear pro se in front of me, and won't be the
last.

Your position is one that really depends on future
events as much as anything.  What we've talked about here
already is to what degree this case will have preclusive
effect on you in the future, meaning in what degree will the
decisions that have already been made or will be made in the
future, in what degree will they be binding on you if you
were to try to sue Microsoft for these same issues again or
sue other related entities on these same issues or claims.
And that's just not something that anybody in the room knows
the answer to.  You don't know whether you'll be able to
pick up and make this happen again in the future or not.  If
you do, it will just be a matter to be litigated.  I'm not
going to pretend to try to figure out what's binding and not
binding.  Clearly, to have this case proceed forward is
going to create at least a very serious risk for you that
the decisions made will be permanently binding upon you.

I'm not convinced that proceeding to summary
judgment dramatically changes your exposure for a decision
being future -- binding on you in the future, since it

1   appears to me likely that Microsoft's motion for summary

2   judgment will be premised almost entirely on claim

3   construction.  Claim construction, although you object to

4   the conduct of your attorneys, did occur during the normal

5   course of litigation in this case.

6          And so I guess that's a long way of saying that

7   this case may damage you, but probably most of the damage

8   has already been done so that if in some future date you

9   seek to undo the damage through litigation, I'm not sure

10  your position is significantly worsened by my decision to

11  proceed to the end of this case.

12         On the other hand, I don't have much other choice.

13  There are claims against you.  I'm not at liberty to just

14  erase them or make them go away.  They need to be brought to

15  a final conclusion.  I have made the decision not to wait

16  further for you to obtain counsel, so we'll just have to

17  wrap this up.

18         You will file, then, as of what date your rebuttal

19  expert report on behalf of Microsoft?

20         MR. MICALLEF:  I think, Your Honor, I would

21  need -- May I remain seated?

22         THE COURT:  Yes.

23         MR. MICALLEF:  I think I can do it within a week,

24  less if you really -- if you need it quicker.

25         THE COURT:  No.  So that means that by the 18th --

1          MR. MICALLEF:  I can do that.

2          THE COURT:  -- you'll file your rebuttal expert

3    report.

4          And that's the same date, Mr. Odom, if you choose

5    to do so, you can file anything you wish to file with regard

6    to expert statements.  I suspect that's not in the cards,

7    but you are free to do so.

8          MR. ODOM:  Thank you, sir.  It's not in the cards.

9          THE COURT:  And then that will close not just fact

10   discovery, which has previously closed, but expert

11   litigation.

12         I'll tell you candidly that I'm going to look

13   carefully at whether your rebuttal expert report is suitable

14   for reliance for dispositive motions, and to the degree that

15   I can resolve the case without relying on it, I will, since

16   that puts us in a more pristine posture with regard to

17   Mr. Odom's represented status in the case.

18         But in any event, we'll take a look at dispositive

19   motions.  How soon after you file your rebuttal expert

20   report are you prepared to submit your own dispositive

21   motions?

22         MR. MICALLEF:  Perhaps two weeks, Your Honor.

23         THE COURT:  And could you help me with that?  How

24   far after the 18th is two weeks?

25         THE CLERK:  That's going to be March 1st -- or

1    April 1st.

2              THE COURT:  So April 1st, Microsoft will file

3    dispositive motions.

4              Mr. Odom, on the one hand I take seriously and at

5    face value your candid statements that you feel overwhelmed

6    by this procedure.  That's understandable, and I have no

7    reason to doubt that that's the position you're actually in.

8              On the other hand, more than many pro se

9    plaintiffs, you are in a position to at least take a shot at

10   some sort of response.  And you've asked for the Court's

11   indulgence in not complying neatly with all the forms and

12   rules, so I'm just simply going to try to give you an

13   opportunity to file, either by letter form or in another

14   format you're comfortable with, your best answer to what you

15   read from Microsoft when you get its motion for summary

16   judgment.  So I'm hopeful that it will be decipherable, and

17   I've tried to suggest to you that there are really typically

18   two issues:  one is that there remains, despite what

19   Microsoft contends, some fact that's really not

20   uncontroverted that would point to factual controversies

21   that Microsoft cannot resolve by saying there's simply no

22   dispute; and the other is more difficult for you, and that

23   is that the legal theory Microsoft rests on, saying, well,

24   patent law doesn't recognize this cluster of facts as a

25   viable claim, you need to try your best to say, well, yes,

1    patent law does recognize the possibility that this cluster

2    of facts represents a viable claim.

3            So I'm not holding you to format rules or anything

4    like that, but I'm going to start out by assuming that a

5    month later, you could file a response.

6            And I assume that's May 3rd.  Is that the Monday

7    that would follow?

8            THE CLERK:  What was the date that you had me do

9    that?

10           THE COURT:  April 1st, 30 days later.

11           THE CLERK:  Yes, May 3rd.

12           THE COURT:  So May 3rd, 2010 would be the date for

13   Mr. Odom's response to Microsoft's motion for summary

14   judgment.

15           And then you'd want about two weeks to reply?

16           MR. MICALLEF:  Yes, Your Honor.

17           THE CLERK:  And that would be --

18           THE COURT:  The 17th?

19           THE CLERK:  -- yes, the 17th.

20           THE COURT:  May 17th, 2010 for Microsoft's reply.

21           Once the briefing is done, I'll make a decision.

22   That decision may or may not require oral argument, and I'll

23   just -- I won't know the answer to whether we'll hold a

24   hearing until I see all the briefing.

25           Again, this is the kind of case typically where

1    oral argument typically would not be helpful, except that

2    your experience in the industry, your expertise in the

3    industry may in fact make you someone among pro se

4    plaintiffs who is far more qualified than the average to

5    have something helpful to offer in oral argument.  We'll

6    just wait and see.  If I hold oral argument, I'll give you

7    notice of it in time to get ready for it.  If not, I'll

8    simply issue a written opinion, outlining my answer to

9    essentially the question being raised by summary judgment.

10           I think it's probably the wiser course not to

11   schedule anything past that point.  If summary judgment is

12   denied -- and I have obviously no opinion one way or the

13   other on that -- the idea that we would try this case

14   boggles the mind, and so I'm just hoping to figure out how

15   that might work out if we get to that point.

16           The fact -- I assure you, Mr. Odom, the fact that,

17   for all of us, you included, a trial seems a difficult

18   matter will have no impact on my decision whether you win or

19   lose at summary judgment.  We've had pro se trials before,

20   and we do our best to make sure it's fair.

21           And, of course, I hope it goes without saying that

22   in all of this, you're at liberty at any point to seek to

23   obtain counsel and interject counsel into the proceeding at

24   any point you're able to do so.

25           So we'll not schedule anything beyond the last

filing for summary judgment.  And then shortly after any

resolution of summary judgment, assuming it's necessary,

we'll make further scheduling decisions about preparation

for trial and trial.

        Mr. Odom, anything further today, sir?

        MR. ODOM:  Yes, two things.  Number one, I will do

my best to conform and meet my obligations here.

        THE COURT:  Thank you.

        MR. ODOM:  The other matter is with regard to the

unsealing of the telephone status conference that occurred

on December 2nd.

        THE COURT:  Yes.

        MR. ODOM:  There was a statement that said that

communications disclosed in the unsealed portion do not fall

within either attorney-client privilege or work product

doctrine.

        I am forced to disagree.  I don't understand why

that portion -- the portion was unsealed.  The portion that

was unsealed was of my erstwhile attorney, Ed Goldstein,

reading an e-mail to you out loud, an e-mail that I had

written to Ed Goldstein that said that it was confidential

and legally privileged.  That was a communication from me to

Ed Goldstein.  My understanding is that Ed Goldstein's

reading of that to you was a breach of his duty of

confidentiality, that that is a communication that is not to

1    be disclosed to the public, that there is an issue with

2    regard to attorney-client privilege.

3         I would motion the Court to rescind and expunge

4    that from the record.  If the Court for some reason desires

5    to have -- and it was taken out of context.  The

6    truthfulness of Ed Goldstein's reading and the context in

7    which it occurred, the entire e-mail, cannot go undisputed.

8    I have the entire e-mail.  If you wish to have an in-camera

9    inspection of the entire e-mail, I can provide it to you.

10        Once again, I don't quite know what the situation

11   is, what your motivation is or what the legal parameters

12   are, but it didn't seem copacetic to me.

13        THE COURT:  All right.  I am not going to

14   currently debate work product or attorney-client privilege.

15   I will explain that the reason the statement was put into

16   the record is that I was forced to make a decision about

17   whether to allow the case to proceed without allowing you

18   further time to obtain counsel.  That document or that

19   exchange went to that issue in a way that formed part of the

20   reason why I was unwilling to devote further time to you

21   seeking to obtain new counsel.

22        Today I'm going to take your statement as, at a

23   minimum, a couple of things:  One, a request to supplement

24   the record with the rest of the e-mail.  If that is what

25   you'd like to do, if you'd like to have the rest of the

1   e-mail in the record, then I will grant that request.  Is

2   that what you'd like to do?

3            MR. ODOM:  Not -- no, Your Honor.

4            THE COURT:  Well, let me tell you the second thing

5   I think you're doing, and that may affect your answer to the

6   first.

7            The second is that I am taking it as a request to

8   seal that portion of the record so that it's a part of the

9   record but not generally available to the public, and to the

10  degree you're requesting that, I will also grant that

11  request.

12           MR. ODOM:  (Nods head.)

13           THE COURT:  Are you requesting that that

14  transcript be sealed?

15           MR. ODOM:  Yes, Your Honor.

16           THE COURT:  I grant the request that that

17  transcript be sealed.

18           On a sealed basis, would you like the remainder of

19  the e-mail to be made part of the record?

20           MR. ODOM:  Yes, Your Honor.

21           THE COURT:  I will also grant that request.  Will

22  you submit a copy of that to the Court?

23           MR. ODOM:  Yes, Your Honor.

24           THE COURT:  You can do that by simply attaching it

25  as an e-mail to Ms. Stephens, unless you'd like to just

1    leave a physical copy of it here today.

2           MR. ODOM:  I do have a physical copy of it.

3           THE COURT:  Then if you'll forward that to the

4    courtroom deputy, she'll mark it as an exhibit, it will be

5    received, and I will make it a sealed part of the record in

6    this case.

7           MR. ODOM:  Thank you, Your Honor.

8           THE COURT:  For Microsoft, anything further today?

9           MR. MICALLEF:  I have nothing, Your Honor.  Thank

10   you.

11          THE COURT:  Very well.  We're in recess.

12          (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                *3/16/10*
_____          _____
BONITA J. SHUMWAY, CSR, RMR, CRR      DATE
Official Court Reporter